**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Pelton@PeltonGraham.com
Taylor B. Graham (TG 9607)
Graham@PeltonGraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **PORFIRIO LOPEZ, PEDRO CANDELARIO TORRES, MARINO CUANUTENCOS, MIRYM UDY, RUPERTO EMIGDIO, JOSE ANGEL LOPEZ, ESTEBAN TOSHUA, and FELIPE CRUZ, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | **CLASS & COLLECTIVE ACTION COMPLAINT** |
| -against- | **Jury Trial Demanded** |
| **PARALIA CORPORATION d/b/a DEL RIO DINER, BENSONHURST REST. CORP. d/b/a VEGAS DINER, THEODOROS VLAMIS, LARRY GEORGETON, DEMETRIOS "JAMES" VLAMIS, and FRANK MAVROMICHALIS, Jointly and Severally,** | |
| **Defendants.** | |

Plaintiffs Porfirio Lopez, Pedro Candelario, Marino Cuanutencos, Mirym Udy, Ruperto Emigdio, Jose Angel Lopez, Esteban Toshua, and Felipe Cruz (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## **NATURE OF THE ACTION**

1.      Plaintiffs are former kitchen employees, servers, hostesses, and bussers at Defendants' diners located in Brooklyn, New York.  While working for Defendants, Plaintiffs and Defendants' other employees were paid below minimum wage and did not receive overtime premiums for hours worked over forty (40) in a given workweek.  In addition, Defendants did not pay Plaintiffs spread-of-hours premiums for shifts lasting ten (10) or more hours and did not provide Plaintiffs with proper wage notices or wage statements.

2.      Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

4.      Plaintiffs also bring this action on behalf of themselves, and all other former employees who worked for Defendant Paralia Corp. d/b/a Del Rio Diner, and who were terminated without cause, as part of or as a result of, a "plant closing" – i.e. the closing of Del Rio Diner – ordered by Defendants on or about July 24, 2016, and who were not provided ninety (90) days advanced written notice of their terminations by Defendants, as required by the New York State Worker Adjustment and Retraining Notification Act ("WARN Act"), NYLL § 860 *et seq.*

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and the acts and/or omissions giving rise to the claims herein took place in this district.

7.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

8.     Plaintiff Porfirio Lopez ("P. Lopez") was, at all relevant times, an adult individual residing in Kings County, New York.

9.     Plaintiff Pedro Candelario Torres ("Candelario") was, at all relevant times, an adult individual residing in Kings County, New York.

10.     Plaintiff Marino Cuanutencos ("Cuanutencos") was, at all relevant times, an adult individual residing in Kings County, New York.

11.     Plaintiff Mirym Udy ("Udy") was, at all relevant times, an adult individual residing in Kings County, New York.

12.     Plaintiff Ruperto Emigdio ("Emigdio") was, at all relevant times, an adult individual residing in Kings County, New York.

3

13.     Plaintiff Jose Angel Lopez ("J. Lopez") was, at all relevant times, an adult individual residing in Kings County, New York.

14.     Plaintiff Esteban Toshua ("Toshua") was, at all relevant times, an adult individual residing in Kings County, New York.

15.     Plaintiff Felipe Cruz ("Cruz") was, at all relevant times, an adult individual residing in Kings County, New York.

16.     Throughout the relevant time period, Plaintiffs performed work for Defendants at Del Rio Diner, located at 166 Kings Highway, Brooklyn, New York 11223.

17.     Plaintiff Udy also performed work for Defendants at Vegas Diner, located at 1619 86th Street, Brooklyn, New York, 11214.

18.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

19.     Upon information and belief, Paralia Corporation d/b/a Del Rio Diner ("Paralia Corp." or "Del Rio Diner") is an active New York Corporation with its principal place of business at 166 Kings Highway, Brooklyn, New York 11223.

20.     Although Paralia Corporation remains active, upon information and belief, Paralia Corporation and the individual Defendants permanently closed Del Rio Diner on July 24, 2016.

21.     Upon information and belief, Bensonhurst Rest. Corp. d/b/a Vegas Diner ("Vegas Diner") is an active New York Corporation with its principal place of business at 1619 86th Street, Brooklyn, New York, 11214.

22.     The corporate defendants listed in paragraphs 19 and 21 are hereinafter referred to

4

collectively as the "Diners" or "Corporate Defendants."

23.     The Corporate Defendants' operations are interrelated and unified and are a single enterprise and/or joint employer of Plaintiffs.

24.     At all relevant times, the Corporate Defendants operated together as a single business enterprise utilizing the same practices and policies and, when necessary, shared employees between the Diners.

25.     Upon information and belief, Defendant Theodoros Vlamis ("T. Vlamis") is an owner and operator of the Corporate Defendants.

26.     Upon information and belief, Defendant Larry Georgeton ("Georgeton") is an owner and operator of the Corporate Defendants.

27.     Upon information and belief, Defendant Demetrios (a.k.a "James") Vlamis ("D. Vlamis") is an owner and operator of the Corporate Defendants.

28.     Upon information and belief, Defendant Frank Mavromichalis ("Mavromichalis" and, collectively with T. Vlamis, Georgeton, and D. Vlamis, the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants.

29.      The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiff and the Corporate Defendants' other similarly situated employees, and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

30.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

31.     At all relevant times, Plaintiff and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

32.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

33.     At all relevant times, the Corporate Defendants have used goods and materials produced in interstate commerce, and have employed two or more individuals who handled these goods and materials.

## FLSA COLLECTIVE ACTION ALLEGATIONS

34.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since December 16, 2013 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees (the "Collective Action Members").

35.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required

6

minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

36.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

**UNPAID WAGES CLASS**

37.     Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since December 16, 2010 and through the entry of judgment in this case (the "Unpaid Wages Class Period") who worked as non-management employees at Del Rio Diner and/or Vegas Diner (the "Unpaid Wages Class Members").

38.     The Unpaid Wages Class Members are readily ascertainable. The number and identity of the Unpaid Wages Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

39.     The Unpaid Wages Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are well in excess of forty (40) Unpaid Wages Class Members.

40.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not

limited to:

a.  whether Defendants employed Plaintiffs and the Unpaid Wages Class Members within the meaning of the NYLL;

b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Unpaid Wages Class Members;

c.  whether Defendants failed and/or refused to pay Plaintiffs and the Unpaid Wages Class Members minimum wage for all hours worked;

d.  whether Defendants failed and/or refused to pay Plaintiffs and the Unpaid Wages Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.  whether Defendants failed to pay Plaintiffs and the Unpaid Wages Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

f.  whether Defendants failed to provide Plaintiffs and the Unpaid Wages Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g.  whether Defendants failed to provide proper accurate wage notices to Plaintiffs and Unpaid Wages Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

h.  whether Defendants' failure to properly pay Plaintiffs and the Unpaid Wages Class Members lacked a good faith basis; and

i.  whether Defendants are liable for all damages claimed hereunder, including but

8

not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

41. <u>Plaintiffs' claims are typical of the Unpaid Wages Class Members' claims</u>. Plaintiffs, like all Unpaid Wages Class Members, are restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Unpaid Wages Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift of ten (10) or more hours and/or a split shift, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Unpaid Wages Class Members.

42. <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Unpaid Wages Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

43. Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Unpaid Wages Class Members.

44. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

45. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

46.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy, except for an individual action brought on behalf of three (3) kitchen employees of Vegas Diner; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

**NY WARN ACT CLASS**

47.     Pursuant to the NYLL, Plaintiffs bring their Eighth Cause of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants at Del Rio Diner who were terminated without cause as the reasonable foreseeable consequence of the plant closing ordered by Defendants on or about July 24, 2016, and who are affected employees, within the meaning of NYLL § 860 *et seq*. (the "Warn Act Class Members").

48.     The Warn Act Class Members are readily ascertainable. The number and identity of the Warn Act Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23

49.     The WARN Act Class Members are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, it is estimated to be more than fifty (50).  The facts on which the calculation of that number can be based are presently within the sole control of Defendants.

50.     Upon information and belief, the identity and the recent residence address of each of the WARN Act Class Members is contained in the books and records of Defendants.

51.     Upon information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Act Class Member at the time of his or her termination is contained in the books and records of the Defendants.

52.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.     whether the WARN Act Class Members were employees of the Defendants who worked at or reported to Defendants' place of business;

b.     whether the members of the WARN Act Class were employees of the Defendants who worked in a covered site of employment of Defendants;

c.     whether Defendants unlawfully terminated the employment of the members of the WARN Act Class without cause on their part and without giving them ninety (90) days advance written notice in violation of NY WARN Act; and

d.     whether Defendants unlawfully failed to pay the WARN Act Class Members sixty (60) days wages and benefits as required by New York WARN Act.

53.     The Plaintiffs' claims are typical of those of the WARN Act Class Members.  The Plaintiffs, like other WARN Act Class Members, worked at or reported to Defendants' place of employment and were terminated without cause on or about July 24, 2016, due to the plant closing ordered by Defendants.

54.     The Plaintiffs will fairly and adequately protect the interests of the WARN Act Class Members.  The Plaintiffs have retained counsel competent and experience in complex class actions, including the WARN Act and employment litigation.

11

55.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual WARN Act Class Members are small compared to the expense and burden of individual prosecution of this litigation.

56.     Concentrating all the potential litigation concerning WARN Act rights of the WARN Act Class Members in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is most efficient means of resolving the WARN Act rights of all the members of the Class.

## STATEMENT OF FACTS

**Defendants' Diners**

**DEL RIO DINER**

57.     Upon information and belief, during the relevant time period, prior to its closing on July 24, 2016, Del Rio Diner operated seven (7) days per week, twenty-four (24) hours per day.

58.     Upon information and belief, Paralia Corp. and the Individual Defendants operated Del Rio Diner from in or around 1975 to July 24, 2016.

59.     Upon information and belief, prior to the closing of the Del Rio Diner on July 24, 2016, Defendants Larry Georgeton, Frank Mavromichalis and Demetrios Vlamis were a constant presence at the diner and took an active role in ensuring that the establishment is run in accordance with their procedures and policies.

60.     Upon information and belief, at all times relevant, Defendants Larry Georgeton,

Frank Mavromichalis, and Demetrios Vlamis have had power over payroll and personnel decisions at Del Rio Diner, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

61.     Prior to and after closing Del Rio Diner, Defendants posted a sign on the door of Del Rio Diner stating, among other information, "Join Us at our other location The Vegas Diner…same ownership, same great staff & same great food."

**VEGAS DINER**

62.     Upon information and belief, Vegas Diner is open to the public seven (7) days per week, twenty-four (24) hours per day.

63.     Upon information and belief, Bensonhurst Rest. Corp. and the Individual Defendants have operated Vegas Diner since in or around 1980 to the present.

64.     In the corporate filings with the New York State Department of State, Division of Corporations, Individual Defendant Theodoros Vlamis is listed as the Chief Executive Officer of Bensonhurst Rest. Corp.

65.     Upon information and belief, Defendants Theodoros Vlamis and Frank Mavromichalis, are a constant presence at Vegas Diner and take an active role in ensuring that the establishment is run in accordance with their procedures and policies.

66.     Upon information and belief, at all times relevant, Defendants Theodoros Vlamis and Frank Mavromichalis have had power over payroll and personnel decisions at Vegas Diner, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

67.     **Plaintiff Esteban Toshua** was employed by Defendants as a line cook at Del Rio Diner from in or around 2004 to July 24, 2016 (the "Toshua Employment Period").

68.     Throughout the Toshua Employment Period, Plaintiff Toshua was typically scheduled to work six (6) days per week, with most Thursdays off.  From in or around 2004 to in or around 2013, Plaintiff Toshua generally worked from approximately 11:00 am to approximately 11:00 pm, twelve (12) hours shifts, for a total of approximately seventy-two (72) hours per week. From in or around 2013 to the end of the Toshua Employment Period, Plaintiff Toshua typically worked six (6) days per week, from approximately 1:00 pm to approximately 10:00 pm, nine (9) hours shifts, for a total of approximately fifty-four (54) hours per week.

69.     Throughout the Toshua Employment Period, Plaintiff was always paid a fixed salary each week, regardless the number of hours he worked during the week.  From in or around 2004 to in or around 2007, Plaintiff Toshua was paid approximately three hundred and twenty dollars ($320) per week.  From in or around 2007 to in or around 2010, Plaintiff Toshua was paid approximately three hundred and sixty dollars ($360) per week.  From in or around 2010 to in or around 2012, Plaintiff Toshua was paid approximately four hundred and ten dollars ($410) per week.  From in or around 2012 until in or around 2016, Plaintiff Toshua was paid approximately five hundred dollars ($500) per week.  During the last two (2) months of his employment, Plaintiff Toshua was paid approximately five hundred and fifty dollars ($550) dollars per week.

70.     Plaintiff Toshua was paid his wages in cash each week, usually from the hands of individual defendant Frank Mavromichalis.  The cash was not accompanied by any paystub or wage statement showing his hours worked or hourly rate.

14

71.    **Plaintiff Marino Cuanutencos** was employed by Defendants as a dishwasher, food prep, line cook, and cook helper at Del Rio Diner, from in or around 2000 to July 24, 2016 (the "Cuanutencos Employment Period").

72.    Throughout the Cuanutencos Employment Period, Plaintiff Cuanutencos was typically scheduled to work six (6) days per week, with most of Tuesdays off.   Plaintiff Cuanutencos typically worked from approximately 9:00 am to approximately 7:00 pm, ten (10) hours shifts, for a total of approximately sixty (60) hours per week.   From in or around 2005 to in or around 2016, when he started to worked as the cook helper, Plaintiff Cuanutencos generally worked from approximately 6:00 am to approximately 2:00 pm, eight (8) hours shifts, for a total of approximately forty-eight (48) hours per week.

73.    Throughout the Cuanutencos Employment Period, Plaintiff was always paid a fixed salary each week, regardless the number of hours he worked during the week.   From in or around 2008 to in or around 2016, Plaintiff Cuanutencos was paid approximately five hundred dollars ($500) per week.   During the last few months of his employment with Defendants' in 2016, Plaintiff Cuanutencos was paid approximately five hundred and fifty dollars ($550) dollars per week.

74.    Plaintiff Cuanutencos was paid his wages in cash each week, usually from the hands of individual defendant Frank Mavromichalis.   On few occasions, individual defendant Larry Georgeton pay the wages to Plaintiff Cuanutencos and the other employees, in case defendant Michaels was absent. The cash was not accompanied by any paystub or wage statement showing his hours worked or hourly rate.

75.    **Plaintiff Felipe Cruz** was employed by Defendants as a dishwasher and line cook

15

at Del Rio Diner from in or around 1992 to July 24, 2016 (the "Cruz Employment Period").

76.     Throughout the entire Cruz Employment Period, Plaintiff Cruz was typically scheduled to work six (6) days per week, with most Mondays off.  Plaintiff Cruz generally worked from approximately 8:00 am to either approximately 6:00 pm or 7:00 pm, ten (10) or eleven (11) hour shifts, for a total of approximately sixty (60) to sixty-six (66) hours per week.

77.     Throughout the Cruz Employment Period, Plaintiff Cruz was always paid a fixed salary each week, regardless the number of hours he worked during the week. From in or around 2001 to the end of the Cruz Employment Period, Plaintiff Cruz was paid approximately four hundred and fifty dollars ($450) per week.

78.     Plaintiff Cruz was paid his wages in cash each week, usually from the hands of individual Defendant Frank Mavromichalis.  The cash was not accompanied by any paystub or wage statement showing his hours worked or hourly rate.

79.     From in or around 2015 to the end of his employment period, Plaintiff Cruz was still receiving his wages in cash, but the payment was accompanied by a paystub with the incorrect calculation of the hours worked in a given workweek.

80.     At some point during his employment period, Plaintiff Cruz was instructed by Defendant Mavromichalis to use a time card to clock in to the time clock for hours that he worked up until he reached forty (40) hours of work for the week but not after he reached 40 hours. Because Plaintiff Cruz was paid a fixed salary each week regardless of the number of hours that he worked, he and Defendants' other employees did not use the time clock on a regular basis to keep track of their hours worked.

81.     **Plaintiff Ruperto Emigdio** was employed by Defendants as a busser and server at

16

Del Rio Diner from in or around 1992 to July 24, 2016 (the "Flores Employment Period").

82.     From the beginning of Flores Employment Period until in or around 2012, Plaintiff Flores was typically scheduled to work six (6) days per week, ten (10) hours shifts, for a total of approximately sixty (60) hours per week. From in or around 2012 to the end of the Flores Employment Period, Plaintiff Flores generally worked five (5) days per week, from approximately 7:00 am to approximately 5:00 pm during weekdays, ten (10) hour shifts, and from approximately 9:00 am to approximately 9:00 pm during weekends, twelve (12) hours shifts, for a total of approximately fifty-two (52) to fifty-four (54) hours per week.

83.     During the period Plaintiff Flores worked as a busser at Defendants' diner, from in or around 1992 to in or around 2005, Plaintiff was paid at a rate of two dollars ($2.00) per hour, plus gratuities that bussers received from servers. From in or around 2005 to the end of his employment period, Plaintiff Flores worked for Defendants as a server.   From in or around 2005 to in or around 2012, as a server, Plaintiff Flores was paid at a rate of one dollar ($1.00) per hour, plus gratuities.  From in or around 2012 to in or around 2016 at the end of his employment period, Plaintiff Flores was paid at a rate of two dollars and fifty cents ($2.50) per hour.

84.     From in or around 1992 to in or around 2012, Plaintiff Flores was paid his wages in cash each week, usually from the hands of individual defendant Frank Mavromichalis. The cash was not accompanied by any paystub or wage statement showing his hours worked or hourly rate. From in or around 2012 to in or around 2016, at the end of his employment period, Plaintiff Flores was still paid his wages in cash, but the payment was accompanied by a paystub that did not reflect the hours worked in a given workweek.

85.     **Plaintiff Jose Angel Lopez** was employed by Defendants as a dishwasher, food

17

prep and line cook at Del Rio Diner from in or around 1985 to July 24, 2016 (the "J. Lopez Employment Period").

86.     Throughout the J. Lopez Employment Period, from in or around 1985 to in or around 2014, Plaintiff J. Lopez was typically scheduled to work six (6) days per week, ten (10) hours shifts, with most Mondays off, for a total of approximately sixty (60) hours per week. Plaintiff J. Lopez generally worked from approximately 1:00 pm to approximately 11:00 pm. During this time period, Plaintiff J. Lopez was often requested to worked seven (7) days per week, or to "double" his shift when some person at the kitchen was absent, either a dishwasher or line cook, ending frequently with shifts of twenty (20) hours per day.

87.     From in or around 2014 to the end of J. Lopez employment period in or around July 2016, after Plaintiff J. Lopez suffered an accident at work that prevent him to work as many strenuous hours as he was doing before, Plaintiff J. Lopez was scheduled to work typically six (6) days per week, with most Mondays off, from approximately 12:00 pm to approximately 8:00 pm, eight (8) hours shift, for a total of approximately forty-eight (48) hours per week.

88.     Throughout the J. Lopez Employment Period, Plaintiff was always paid a fixed salary per week, regardless the number of hours he worked during the week.  From in or around 2005 to in or around 2016, Plaintiff J. Lopez was paid approximately five hundred dollars ($500) per week.  During the last two (2) months of his employment period, in or around 2016, Plaintiff J. Lopez was paid six hundred dollars ($600) per week.

89.     Plaintiff J. Lopez was paid his wages in cash each week, usually from the hands of individual defendant Frank Mavromichales, in some occasions by individual defendant Larry Georgeton. The cash was not accompanied by any paystub or wage statement showing his hours

worked or hourly rate.

90.     **Plaintiff Pedro Candelario Torres** was employed by Defendants as a busser and line cook at Del Rio Diner from in or around 1996 to July 24, 2016 (the "Candelario Employment Period").

91.     Throughout the Candelario Employment Period, Plaintiff Candelario was typically scheduled to work six (6) days per week, with most Wednesdays off.  Throughout his employment period, Plaintiff Candelario generally worked Mondays to Thursdays, from approximately 5:00 pm to approximately 2:00 am and 3:00 am, nine (9) to ten (10) hours shifts, and Fridays and Saturdays from approximately 5:00 pm to approximately 5:00 am and 6:00 am, twelve (12) and thirteen (13) hours shifts, for a total of approximately sixty (60) to sixty-six (66) hours per week.

92.     From in or around 1996 to in or around 2001, Plaintiff Candelario worked as a busser at Defendants' establishment.  During that period, Plaintiff Candelario was paid his wages entirely in cash, at a rate of two dollars ($2.00) per hour, plus gratuities they received from servers at the diner.  The cash Plaintiff Candelario received was not accompanied by any paystub or wage statement showing his hours worked or hourly rate.

93.     From in or around 2001 to in or around July 2016, until the end of his employment period, Plaintiff Candelario worked as a line cook, grill men, deep fry cook, and boiler cook.

94.     During the period Plaintiff Candelario worked as a cook at Del Rio Diner, Plaintiff Candelario was always paid a fixed salary per week, regardless the number of hours he worked during the week.  From in or around 2007 to in or around 2014, Plaintiff Candelario was paid five hundred and fifty dollars ($550) per week.  From in or around 2014 to in or around 2016, Plaintiff Candelario was paid six hundred fifty dollars ($650) per week.  During the last month of his

employment period at Defendants' diner, Plaintiff Candelario was paid the seven hundred and fifty dollars ($750) per week.

95.    Throughout his entire employment period Plaintiff Candelario was paid his wages in cash each week, usually from the hands of individual defendant Frank Michaels. The cash was not accompanied by any paystub or wage statement showing his hours worked or hourly rate. During that last portion of his employment, Plaintiff Candelario received his cash payment with a pay stub with an incorrect calculation of the number of hours worked during the given workweek.

96.    **Plaintiff Porfirio Lopez** was employed by Defendants as dishwasher and a line cook at Del Rio Diner from in or around March 1990 to July 24, 2016 (the "P. Lopez Employment Period").

97.    Throughout the P. Lopez Employment Period, Plaintiff P. Lopez was typically scheduled to work six (6) days per week, with most Thursdays off.   Throughout his employment period, Plaintiff P. Lopez generally worked Mondays and Tuesdays from approximately 3:00 pm to approximately 10:00 pm, seven (7) hours shifts, Wednesdays and Fridays from approximately 3:00 pm to approximately 1:00 am, ten (10) hours shifts, Saturdays from approximately 1:00 pm to approximately 10:00 pm, ten (10) hours shifts, and on Sundays from approximately 9:00 am to approximately 1:00 am, sixteen (16) hours shifts, for a total of approximately sixty (60) hours per week.

98.    Throughout the P. Lopez Employment Period, Plaintiff was always paid a fixed salary each week, regardless the number of hours he worked during the week.  During the relevant time period, from in or around 2010 to in or around 2015, Plaintiff P. Lopez was paid approximately five hundred dollars ($500) per week.  From in or around 2015 to in or around the

20

beginning of 2016, Plaintiff P. Lopez was paid approximately seven hundred and twenty-five dollars ($725) per week.  Finally, from in or around March 2016 to the end of the P. Lopez Employment Period, Plaintiff P. Lopez was paid approximately eight hundred dollars ($800) per week.

99.     Throughout his employment period, Plaintiff P. Lopez was paid his wages entirely in cash each week, usually from the hands of individual Defendant Frank Mavromichalis.  The cash was not accompanied by any paystub or wage statement showing his hours worked or hourly rate.

100.     From in or around 2012 to in or around 2016, Plaintiff P. Lopez received his wages in cash, but it was accompanied with a paystub that typically reflected an inaccurate calculation of the total number of hours worked during the given workweek.

101.     **Plaintiff Mirym Udy** was employed by Defendants as server and hostess at Del Rio Diner from in or around 2008 to in or around 2012 and again from in or around 2014 to July 24, 2016.  Plaintiff Udy was also employed by Defendants as a hostess and server at Vegas Diner for approximately four (4) months during 2014 to 2015, alternating certain days of the week in both diners (the "Udy Employment Period").

102.     During the period Plaintiff Udy worked at Del Rio Diner, from in or around 2008 to in or around 2012, Plaintiff Udy was typically scheduled to work five (5) days per week, with most Fridays and Saturdays off.  Plaintiff Udy generally worked Mondays from approximately 11:00 am to approximately 5:00 pm, six (6) hours shifts; Tuesdays from approximately 7:00 am to approximately 3:00 pm, eight (8) hours shifts; Wednesdays from approximately 8:00 am to approximately 5:00 pm, nine (9) hours shifts; Thursdays from approximately 9:00 pm to

21

approximately 7:00 am, ten (10) hours shifts; and Sundays from approximately 9:00 am to approximately 9:00 pm, twelve (12) hours shifts, for a total of approximately forty-five (45) hours per week.

103.    During Plaintiff Udy's second period of employment at Del Rio Diner, from in or around 2014 to 2016, Plaintiff Udy generally worked four (4) days per week, with the following schedule: Wednesdays from approximately 9:00 pm to approximately 7:00 am, ten (10) hours shifts; Thursdays from approximately 9:00 pm to approximately 7:00 am, ten (10) hours shifts; and Saturdays, from approximately 9:00 am to approximately 9:00 pm, twelve (12) hours shifts, for a total of approximately forty-four (44) hours per week.

104.    During the four (4) months Plaintiff Udy worked at Vegas Diner, she was scheduled to work two (2) days per week, one day as a hostess/server and the other day as a server.  Plaintiff Udy generally worked ten (10) hours shifts from approximately 9:00 pm to approximately 7:00 am.

105.    During her first period working at Del Rio Diner, from in or around 2008 to in or around 2012, Plaintiff Udy received one dollar ($1.00) per hour for all hours worked.  When she returned to work at Del Rio Diner in or around 2014, Plaintiff Udy was paid approximately five dollars ($5.00) per hour.

106.    During the period Plaintiff Udy worked at Vegas Diner as a server and hostess, she was paid one dollar ($1.00) per hour.

107.     While working "on-the-books" at Del Rio Diner, when closing out at the end of her shift, Plaintiff Udy was instructed to input into the POS system that she made approximately $5.00 per hour in tips, regardless of whether she actually earned that amount.  Upon information

22

and belief, Defendants utilized the approximately $5.00 per hour in tips to report such tips on Plaintiff Udy's paycheck so that the taxes withheld on the reported tips would result in a net wage payment of approximately $2.00 per hour.

108.    From in or around 2008 to in or around 2012, Plaintiff Udy was paid her wages entirely in cash each week, usually from the hands of individual Defendant Frank Mavromichalis, and sometimes she was paid by individual Defendant Larry Georgeton, who under her knowledge and belief, was the bookkeeper at both diners. The cash was not accompanied by any paystub or wage statement showing her hours worked or hourly rate.

109.    From in or around 2014 to in or around 2016, Plaintiff Udy still received her wages entirely in cash, but the payment was accompanied by a pay stub with an inaccurate record of the amount of hours worked during the given workweek.

110.    While working at Vegas Diner and, upon information and belief at the present time, Defendants did not maintain a P.O.S. or other computer system for recording hours worked.

**Defendants' Unlawful Corporate Policies**

111.    Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

112.    Plaintiffs have spoken with other employees of Defendants who were similarly paid below minimum wage for all hours worked.  Defendants' failure to pay Plaintiffs minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their tipped and non-management employees throughout the Class Period.

113.    Plaintiffs have spoken with other employees of Defendants who were similarly paid

on a fixed salary and/or per hour, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

114.    Defendants' failure to pay Plaintiffs spread-of-hours premiums for days in which Plaintiffs have worked a spread of more than ten hours or a split shift has been a corporate policy which applies to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the Class Period.

115.    Defendants did not notify Plaintiffs or the Class Members whether they were relying upon the tip credit in calculating their hourly rate in accordance with the requirements of the NYLL.

116.    Plaintiffs have spoken with other employees of Defendants, who similarly were paid in cash and received no pay stub or accurate wage statements with their payment of wages. Defendants' failure to provide wage statements in accordance with the requirements of the NYLL was a corporate policy that applied to all hourly employees throughout the relevant time period.

117.    Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**WARN Act Violation**

118.    Defendants failed to provide Plaintiffs and the WARN Act Class Members working at Del Rio Diner with proper WARN Act notices ninety (90) days in advance of the closing of Del Rio Diner on July 24, 2016 (i.e., the plant closing).

119.    Plaintiffs and the WARN Act Class Members suffered employment loss as a result of the closing of Del Rio Diner on July 24, 2016.

120.    Defendants' Del Rio Diner constitutes a single site of employment pursuant to the NY WARN Act.

121.    At least twenty-five (25) employees, excluding part-time employees, suffered employment loss as a result of Defendants' closure of Del Rio Diner on July 24, 2016.

122.    Defendants informed Plaintiffs and members of the NY WARN Act Class at Del Rio Diner on or about July 10, 2016, approximately two (2) weeks in advance, that it intended on closing its facilities and laying off Plaintiffs and members of the WARN Act Class on July 24, 2016.

123.    The notice provided to Plaintiffs and the NY WARN Act Class Members did not contain the information required under the WARN Act.

124.    Plaintiffs were laid off in violation of WARN Act on or around July 24, 2016.

125.    Defendants do not meet any of the exceptions to the 90-day WARN Act notice period.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought On Behalf of Plaintiffs and the Collective Action Members)**

126.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

127.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

128.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.   Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought On Behalf of Plaintiffs and the Collective Action Members)**

129.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

130.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated

26

and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

131.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

132.   Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought On Behalf of Plaintiffs and the Class Members)**

133.   Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

134.   Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

135.   Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

27

### FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought On Behalf of Plaintiffs and the Class Members)**

136.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

137.    Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

138.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS
**(Brought On Behalf of Plaintiffs and the Class Members)**

139.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

140.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in

violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

141.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought On Behalf of Plaintiffs and the Class Members)**

142.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

143.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

144.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars

($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought On Behalf of Plaintiffs and the Class Members)**

145.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

146.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

147.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190, et seq., liquidated damages as provided

for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### EIGHTH CAUSE OF ACTION
### NEW YORK LABOR LAW – NEW YORK WARN ACT
### (Brought On Behalf of Plaintiffs and the WARN Act Class Members)

148.    Plaintiffs, on behalf of themselves and the WARN Act Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

149.    At all relevant times, Defendants were an individual or private business entity defined as "employer" under the NY WARN Act and continued to operate as a business until it decided to order a mass layoff or plant closing at the Facility as defined by § 860-A(3), (4).

150.    On or about July 24, 2016, Defendants ordered a plant closing at its Facilities as defined by § 860-A(3), (4).

151.    The Plaintiffs and the Class Members suffered a termination of employment as defined by § 860-A(2)(C) having been terminated by Defendant without cause on their part.

152.    Defendants were required by the NY WARN Act to give the Plaintiffs and the Class Members at least ninety (90) days advance written notice of their terminations pursuant to § 860-B.

153.    Defendants failed to give the Plaintiffs and the Class Members written notice that complied with the requirements of the NY WARN Act.

154.    Defendants failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) days following their respective terminations, and failed to make the pension and 401(k)

contributions and provide employee benefits under ERISA, where applicable, for sixty (60) days from and after the dates of their respective terminations.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members, Unpaid Wage Class Members and WARN Act Class Members, respectfully request that this Court grant the following relief:

a.  Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and his counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Unpaid Wage Class Members and appointing Plaintiffs and his counsel to represent the Class;

c.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the WARN Act Class Members and appointing Plaintiffs and their counsel to represent the Class;

d.  An order tolling the statute of limitations;

e.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

f.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

g.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

i.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

j.      One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.      Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

l.      An award equal to the sum of Plaintiffs and each of the WARN Act Class Members' unpaid wages, salary, commissions, bonuses, accrued holiday pay, pension and

401(k) contributions and other ERISA benefits, for sixty (60) days, that would have been covered and paid under then then-applicable employee benefit plans, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(A)(4) and NYLL § 860-G(7);

m.   An award of prejudgment and post-judgment interest;

n.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       December 16, 2016

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative FLSA Collective and Classes*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Del Rio Diner and Vegas Diner and/or its owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wage, spread of hours, overtime wages, among other claims as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____                    _____
Signature                                    Mirym S. Uly
                                             Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Del Rio Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Del Rio Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


X _PORFIRIO LOPEZ_       _PORFIRIO LOPEZ_
　　　　Firma　　　　　　　　　　　Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Del Rio Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Mariano cuahutencos_
Firma

_cuahutencos_ x
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Del Rio Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

JOSe AWGei López
Firma

JOSe AWGei LOPez
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Del Rio Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

x _FELIPE CRUZ_
Firma

_Felipe cruz_
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Del Rio Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


*Esteban Toslluq*
Firma

*Esteban Toslluq*
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Del Rio Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

X _____
Firma

_____
Pedro Candelario
Nombre Escrito